### Ex parte GRAHAM.

#### (District Court, S. D. California. August 21, 1914.)

#### No. 836.

1. EXTRADITION (§ 32*)—INTERSTATE EXTRADITION—SUFFICIENCY OF INDICT-
MENT.

   An indictment, in order to constitute a sufficient charge of crime to warrant interstate extradition, need show no more than that the accused is substantially charged with crime.

   [Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 36–38; Dec. Dig. § 32.*]

2. EXTRADITION (§ 30*)—INTERSTATE EXTRADITION—FUGITIVE FROM JUSTICE.

   To constitute one a fugitive from justice to warrant his extradition from another state, he must have committed some criminal act when within the state, although the crime may not have been complete until other acts were done after he left the state.

   [Ed. Note.—For other cases, see Extradition, Cent. Dig. § 32; Dec. Dig. § 30.*]

On petition of Benjamin F. Graham for writ of habeas corpus. Continued.

Gray, Barker & Bowen, Paul Schenck, and Oscar Lawler, all of Los Angeles, Cal., for petitioner.

Harry S. Stokes, of Nashville, Tenn., Earl Rogers, W. H. Dehm, Thos. Lee Woolwine, and W. H. Anderson, all of Los Angeles, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ROSS, Circuit Judge. The petitioner, being held a prisoner by the representatives of the state of Tennessee under a warrant issued in extradition proceedings by the Governor of California upon the requisition of the Governor of Tennessee, seeks by habeas corpus to obtain his discharge from such imprisonment.

The Constitution of the United States provides as follows:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime." Clause 2, § 2, art. 4.

To give effect to this constitutional provision Congress passed an act, approved February 12, 1793, c. 7 (1 Stat. 302), the substance of which is reproduced in section 5278 of the Revised Statutes (U. S. Comp. St. 1901, p. 3597) as follows:

"Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the state or territory making such demand, shall be paid by such state or territory."

Objection to the jurisdiction of this court in the premises was made, but was subsequently withdrawn, and as such jurisdiction is, I think, beyond question, nothing further on that subject need be said.

[1] The petitioner being held under warrant issued by the Governor of California, there are but two questions open to the consideration of this court—one a question of law, and the other a mixed question of law and fact. The former is as to the sufficiency of the indictment against the petitioner. The Supreme Court in the case of Pierce v. Creecy, 210 U. S. 387, 401, 28 Sup. Ct. 714, 718 (52 L. Ed. 1113), in considering the validity of an indictment on proceedings similar to the present, said:

"There must be objections which reach deeper into the indictment than those which would be good against it in the court where it is pending. We are unable to adopt the test suggested by counsel, that an objection, good if taken on arrest of judgment, would be sufficient to show that the indictment is not a charge of crime. Not to speak of the uncertainty of such a test, in view of the varying practice in the different states, there is nothing in principle or authority which supports it. Of course such a test would be utterly inapplicable to cases of a charge of crime by affidavit, which was held to be within the Constitution. In Matter of Strauss, 197 U. S. 324 [25 Sup. Ct. 535, 49 L. Ed. 774]. The only safe rule is to abandon entirely the standard to which the indictment must conform, judged as a criminal pleading, and consider only whether it shows satisfactorily that the fugitive has been in fact,

however inartificially, charged with crime in the state from which he has fled. Roberts v. Reilly, 116 U. S. 80, 95 [6 Sup. Ct. 291, 29 L. Ed. 544]; Pearce v. Texas, 155 U. S. 311, 313 [15 Sup. Ct. 116, 39 L. Ed. 164]; Hyatt v. Corkran, 188 U. S. 691, 709 [23 Sup. Ct. 456, 47 L. Ed. 657]; Munsey v. Clough, 196 U. S. 364, 372 [25 Sup. Ct. 282, 49 L. Ed. 515]; Davise's Case, 122 Mass. 324; State v. O'Connor, 38 Minn. 243; State v. Goss, 66 Minn. 291 [68 N. W. 1089]; Matter of Voorhees, 32 N. J. Law, 141; Ex parte Pearce, 32 Tex. Cr. R. 301 [23 S. W. 15]; In re Van Sciever, 42 Neb. 772 [60 N. W. 1037, 47 Am. St. Rep. 730]; State v. Clough, 71 N. H. 594 [53 Atl. 1086, 67 L. R. A. 946]."

And the court concluded its opinion with these words:

"This court, in the cases already cited, has said, somewhat vaguely, but with as much precision as the subject admits, that the indictment, in order to constitute a sufficient charge of crime to warrant interstate extradition, need show no more than that the accused was substantially charged with crime. This indictment meets and surpasses that standard, and is enough. If more were required, it would impose upon courts, in the trial of writs of habeas corpus, the duty of a critical examination of the laws of states with whose jurisprudence and criminal procedure they can have only a general acquaintance. Such a duty would be an intolerable burden, certain to lead to errors in decision, irritable to the just pride of the states and fruitful of miscarriages of justice. The duty ought not to be assumed unless it is plainly required by the Constitution, and, in our opinion, there is nothing in the letter or the spirit of that instrument which requires or permits its performance."

Looking at the indictment here, it is seen that it in effect charges that the petitioner did, on the 27th day of July, 1907, at the county of Davidson, of the state of Tennessee, fraudulently obtain $3,000 of the money of one Thomas P. Ayres, in a certain specified way and by means of certain alleged fraudulent misrepresentations and pretenses. Such acts, if committed, constitute a crime under the laws of the state of Tennessee. The indictment must therefore be held sufficient.

Is the petitioner a fugitive from justice within the meaning of the above-quoted provisions of the Constitution and statutes of the United States? is the only other question that can be here considered.

In the case of McNichols v. Pease, 207 U. S. 100, 108, 109, 28 Sup. Ct. 58, 52 L. Ed. 121, the Supreme Court deduced the following principles from its previous decisions in the cases of Robb v. Connolly, 111 U. S. 624, 639, 4 Sup. Ct. 544, 28 L. Ed. 542, Ex parte Reggel, 114 U. S. 642, 652, 653, 5 Sup. Ct. 1148, 29 L. Ed. 250, Roberts v. Reilly, 116 U. S. 80, 95, 6 Sup. Ct. 291, 29 L. Ed. 544, Hyatt v. Corkran, 188 U. S. 691, 719, 23 Sup. Ct. 456, 47 L. Ed. 657, Munsey v. Clough, 196 U. S. 364, 372, 25 Sup. Ct. 282, 49 L. Ed. 515, Pettibone v. Nichols, 203 U. S. 192, 27 Sup. Ct. 111, 51 L. Ed. 148, 7 Ann. Cas. 1047, and Appleyard v. Massachusetts, 203 U. S. 222, 27 Sup. Ct. 122, 51 L. Ed. 161, 7 Ann. Cas. 1073:

"1. A person charged with crime against the laws of a state and who flees from justice, that is, after committing the crime, leaves the state, in whatever way or for whatever reason, and is found in another state, may, under the authority of the Constitution and laws of the United States, be brought back to the state in which he stands charged with the crime, to be there dealt with according to law.

"2. When the executive authority of the state whose laws have been thus violated makes such a demand upon the executive of the state in which the alleged fugitive is found as is indicated by the above section (5278) of the

Revised Statutes, producing at the time of such demand a copy of the indictment, or an affidavit certified as authentic and made before a magistrate charging the person demanded with a crime against the laws of the demanding state, it becomes, under the Constitution and laws of the United° States, the duty of the executive of the state where the fugitive is found to cause him to be arrested, surrendered, and delivered to the appointed agent of the demanding state, to be taken to that state.

"3. Nevertheless, the executive, upon whom such demand is made, not being authorized by the Constitution and laws of the United States to cause the arrest of one charged with crime in another state, unless he is a fugitive from justice, may decline to issue an extradition warrant, unless it is made to appear to him, by competent proof, that the accused is substantially charged with crime against the laws of the demanding state, and is, in fact, a fugitive from the justice of that state.

"4. Whether the alleged criminal is or is not such fugitive from justice may, so far as the Constitution and laws of the United States are concerned, be determined by the executive upon whom the demand is made in such way as he deems satisfactory, and he is not obliged to demand proof apart from proper requisition papers from the demanding state, that the accused is a fugitive from justice.

"5. If it be determined that the alleged criminal is a fugitive from justice—whether such determination be based upon the requisition and accompanying papers in proper form, or after an original, independent inquiry into the facts—and if a warrant of arrest is issued after such determination, the warrant will be regarded as making a prima facie case in favor of the demanding state and as·requiring the removal of the alleged criminal to the state in which he stands charged with crime, unless in some appropriate proceeding it is made to appear that he is not a fugitive from the justice of the demanding state.

"6. A proceeding by habeas corpus in a court of competent jurisdiction is appropriate for determining whether the accused is subject, in virtue of the warrant of arrest, to be taken as a fugitive from the justice of the state in which he is found to the state whose laws he is charged with violating.

"7. One arrested and held as a fugitive from justice is entitled, of right, upon habeas corpus, to question the lawfulness of his arrest and imprisonment, showing by competent evidence, as a ground for his release, that he was not, within the meaning of the Constitution and laws·of the United States, a fugitive from the justice of the demanding state, and thereby overcoming the presumption to the contrary arising from the face of an extradition warrant."

And the Supreme Court closed its opinion in the case just cited as follows:

"When a person is held in custody as a fugitive from justice under an extradition warrant in proper form, and showing upon its face all that is required by law to be shown as a prerequisite to its being issued, he should not be discharged from custody unless it is made clearly and satisfactorily to appear that he is not a fugitive from justice within the meaning of the Constitution and laws of the United States. We may repeat the thought expressed in Appleyard's Case, above cited, that a faithful, vigorous enforcement of the constitutional and statutory provisions relating to fugitives from justice is vital to the harmony and welfare of the states, and that 'while a state should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a state to find a permanent asylum in the territory of another state.' "

To overcome the prima facie case made by the Governor's warrant under which the present petitioner is held, the latter must therefore show by clear and satisfactory proof that he is not a fugitive from justice.

[2] To constitute one a fugitive from the justice of a state, it is essential that he should in that state have incurred guilt. It is not enough that outside of the state he committed criminal acts intended to produce, and which did produce, detrimental effects within it.

Such acts said the Supreme Court, in Strassheim v. Daily, 221 U. S. 280, 285, 31 Sup. Ct. 558, 560 (55 L. Ed. 735), would—

"justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power. Commonwealth v. Smith, 11 Allen [Mass.] 243, 256, 259; Simpson v. State, 92 Ga. 41 [17 S. E. 984, 22 L. R. A. 248, 44 Am. St. Rep. 75]; American Banana Co. v. United Fruit Co., 213 U. S. 347, 356 [29 Sup. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047]; Commonwealth v. Macloon, 101 Mass. 1, 6, 18 [100 Am. Dec. 89]. We may assume, therefore, that Daily is a criminal under the laws of Michigan. Of course we must admit that it does not follow that Daily is a fugitive from justice. Hyatt v. Corkran, 188 U. S. 691, 712 [23 Sup. Ct. 456, 47 L. Ed. 657]. On the other hand, however, we think it plain that the criminal need not do within the state every act necessary to complete the crime. If he does there an overt act which is and is intended to be a material step toward accomplishing the crime, and then absents himself from the state and does the rest elsewhere, he becomes a fugitive from justice when the crime is complete, if not before. In re Cook, 49 Fed. 833. 843, 844; Ex parte Hoffstot, 180 Fed. 240, 243 [31 Sup. Ct. 222, 54 L. Ed. 1201]; In re William Sultan, 115 N. C. 57 [20 S. E. 375, 28 L. R. A. 294, 44 Am. St. Rep. 433]. For all that is necessary to convert a criminal under the laws of a state into a fugitive from justice is that he should have left the state after having incurred guilt there (Roberts v. Reilly, 116 U. S. 80 [6 Sup. Ct. 291, 29 L. Ed. 544]), and his overt act becomes retrospectively guilty when the contemplated result ensues. Thus in this case offering the bid and receiving the acceptance were material steps in the scheme, they were taken in Michigan, and they were established in their character of guilty acts when the plot was carried to the end, even if the intent with which those steps were taken did not make Daily guilty before. Swift v. United States, 196 U. S. 375, 396 [25 Sup. Ct. 276, 49 L. Ed. 518]."

If, therefore, the present petitioner had been apprehended within the state of Tennessee when, according to his affidavit filed in the proceedings before the Governor of California, he went there in or about the month of August, 1907, he would undoubtedly have been subject to prosecution under an indictment against him. But, as said by the Supreme Court in the case cited and from which the above quotation is taken, it does not follow from this that the petitioner is a fugitive from the justice of the state in which he did not commit the crime. On the contrary, I repeat that to constitute him a fugitive from the justice of the state of Tennessee the commission of some criminal act by him within that state is essential. And such is the effect of the decisions of the Supreme Court above cited.

The gist of the present inquiry, therefore, is whether Graham was in the state of Tennessee at the time he is alleged to have obtained the $3,000 from Ayres by the means and in pursuance of the alleged false representations and pretenses, or was within that state at the time of the commission of any act connected with and culminating in such alleged fraudulent obtaining of the said money, whether such act was committed on the day specified in the indictment, or at any other time provable thereunder. If the said money was so obtained by the petitioner, the crime charged against him was then complete, and if any essential element of it was committed by him within the state of Ten-

nessee he is a fugitive from justice and must be remanded. If, however, the alleged crime was not committed by him within the state of Tennessee, he cannot, for the reasons above stated, be considered a fugitive from justice, even though he was subsequently within the state for a time.

Counsel for the state of Tennessee, insisting that they can show by competent evidence that the petitoner was within that state at the time of the alleged commission of the said crime notwithstanding the contention of the petitioner to the contrary, and having requested a reasonable time within which to procure such proof, and the petitioner likewise requesting further time within which to procure evidence in respect to that question, it is ordered that the matter be continued for further hearing to September 28, 1914, at 10:30 a. m.